IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CYNTHIA GALE HAMILTON          :
FARMER, on behalf of herself and all   :
others similarly situated,              :
                                        :
        Plaintiff,                      :
                                        :
v.                                      :     CIVIL ACTION
                                        :     NO. 2:11-CV-0089-WCO
THE PHILLIPS AGENCY, INC.,              :
                                        :
        Defendant.                      :

## ORDER

The captioned case is before the court for consideration of plaintiff's "Motion

for Class Certification" [37].

## I.    Procedural History

This case was filed on April 11, 2011, alleging violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[1]  According to the complaint,

plaintiff was the subject of an inaccurate and incomplete criminal background report

prepared by defendant.  Defendant is a corporation in the business of compiling

individual consumer reports, including criminal background checks for employment

purposes, from public records databases. Defendant furnishes these reports to

---

[1] Jurisdiction is premised on 28 U.S.C. § 1331.

employers wishing to investigate the background and criminal history of either a job applicant or a current employee. In this motion, plaintiff seeks to certify a class action against defendant premised on one provision of the FCRA, 15 U.S.C. § 1681k.

## II.   The Fair Credit Reporting Act

The FCRA sets standards for consumer reporting agencies. A "consumer reporting agency" ("CRA") includes "any person[2] which, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purposes of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). A "consumer" is "an individual," *id.* § 1681a(c), and a "consumer report" is:

> any written, oral or other communication of any information by a consumer reporting agency bearing on the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
> > (A) credit or insurance to be used primarily for personal, family, or household purposes;

---

[2] A "person" is "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

*Id.* § 1681a(d)(1).  It is undisputed that plaintiff is a consumer, that defendant is a CRA, and that the reports defendant prepared about plaintiff and the putative class members are consumer reports.

FCRA compliance is enforced in several ways.  First, because the violation of any FCRA "requirement or prohibition" constitutes "an unfair or deceptive act or practice in commerce," the Federal Trade Commission ("FTC") has general authority to initiate administrative action against violators, subject to certain exceptions where other federal agencies have jurisdiction. *See id.* § 1681s(a)(1).  The FTC may also bring a civil action in federal court to recover a civil penalty for a CRA's knowing violation of a FCRA requirement.  *Id.* § 1681s(a)(2)(A).  Second, several federal agencies have authority to enforce certain FCRA provisions.  *Id.* § 1681s(b).[3]  Third, a state, acting through either its attorney general or a designated state agency, may file a civil action to enjoin a FCRA violation or to recover damages on behalf of its residents. *Id.* § 1681s(c)(1)(A) and (B).  Lastly, the FCRA contains a private right of

---

[3] These entities include: (1) the Office of the Comptroller of the Currency; (2) the Board of Governors of the Federal Reserve; (3) the Board of Directors of the Federal Deposit Insurance Corporation; (4) the Director of the Office of Thrift Supervision; (5) the Administrator of the National Credit Union Administration; (6) the Secretary of Transportation; and (7) the Secretary of Agriculture.

action allowing an individual consumer to sue a CRA for a FRCA violation with respect to that consumer. Suit may be brought under either § 1681n for a willful violation or § 1681o for a negligent violation.

This putative class-action lawsuit is brought under § 1681n.[4] Section 1681n(a) allows a consumer to sue when a CRA "willfully fails to comply with any requirement imposed under [the FCRA] with respect to [that] consumer . . . ." *Id.* The CRA "is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." *Id.* § 1681n(a)(1)(A).

Plaintiff alleges that defendant willfully failed to comply with § 1681k. That statute applies to any CRA "which furnishes a consumer report for employment purposes[5] and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." *Id.* § 1681k. Such a CRA must do one of two things. The CRA can give the consumer notice "at the time such public

---

[4] Although the complaint mentions both § 1681n and § 1681o, at this stage plaintiff seeks class certification only under § 1681n.

[5] The FCRA permits a CRA to furnish a consumer report only under certain circumstances. *See* 15 U.S.C. § 1681b(a). A CRA may furnish a consumer report when it has reason to believe that the person receiving the report "intends to use the information for employment purposes." *Id.* § 1681b(a)(3)(B).

information is reported" of "the fact that public record information is being reported

. . . together with the name and address of the person to whom such information is

being reported." *Id.* § 1681k(a)(1). This will be referred to as the "notice" provision

of § 1681k. Or, the CRA can:

> maintain strict procedures designed to insure that whenever public record
> information which is likely to have an adverse effect on a consumer's
> ability to obtain employment is reported it is complete and up to date.
> For purposes of this paragraph, items of public record[6] relating to arrests,
> indictments, convictions, suits, tax liens, and outstanding judgments shall
> be considered up to date if the current public record status of the item at
> the time of the report is reported.

*Id.* § 1681k(a)(2). This will be referred to as the "completeness" provision of

§ 1681k.

### III.   Procedural Background

On November 16, 2011, plaintiff filed this motion for class certification. A

hearing was held on April 16, 2012. At the conclusion of the hearing, the court

allowed the parties to submit supplemental briefing.

---

[6] The distinction between a consumer report and an item of public record contained within
that report is important. The term "consumer report" refers to the entire report disclosed by the CRA
and *all* of the information contained therein. A record is a specific item of public record, such as
a criminal conviction, included within a consumer report. Section 1681k(a)(2) requires "each *item*
reported to be complete and up to date." Federal Trade Commission Staff Opinion Letter, 1999 WL
33932137, at *1 (Dec. 16, 1999) (emphasis added).

Plaintiff seeks to certify the following class:

> All natural persons residing within the United States and its Territories who, beginning five years prior to the filing of this Complaint and continuing through the conclusion of this action, were the subject of an employment consumer report prepared by Defendant which included any adverse criminal or public record information–including any judgment of conviction, traffic offense, summary infraction, arrest, bankruptcy, civil judgment or tax lien.

(Pl.'s Mot. for Class Certification 1.)  Plaintiff argues that this class of consumers has been aggrieved by defendant's systematic violation of § 1681k.  Since defendant concedes that it never sends notice when it issues an employment report, plaintiff claims that defendant can only comply with the FCRA if it maintains the "strict procedures" described in § 1681k(a)(2).  Plaintiff argues that defendant applied the same substandard quality-control procedures to every consumer  report it furnished.  Accordingly, plaintiff contends that defendant has willfully violated § 1681k–by failing to comply with either § 1681k(a)(1) or § 1681k(a)(2)– with respect to each putative class member.

## IV.   Factual Background

Defendant acknowledges that it is a CRA. (*See* Dep. of Letha Phillips 16.) It also admits that it furnishes consumer reports containing potentially adverse information for employment purposes.  These reports are furnished to businesses seeking information about either their employees or their prospective employees.

6

Once defendant receives an inquiry from an employer about a background check for a particular individual, defendant records the name and identifying information of that individual.  (*Id.* at 117-18.)  The requesting business tells defendant the type of background history–credit information, employment history, criminal background, bankruptcy records, or educational history–to provide. Defendant will then search record databases to obtain the requested information.

The main databases that defendant uses to gather information are accessed through a computer network operated by Deverus.  (*Id.* at 44.)  Deverus contracts with private databases that collect and report public record information and provides access to those databases through its computer network.  CRAs like defendant then contract with Deverus to access this network.  (*Id.*)

Apparently, Deverus uses different private databases to obtain information depending on the type of information sought.  There is some information in the record about the database sources Deverus utilizes.  For a consumer's credit history information, Deverus checks Equifax.  (*Id.* at 99, 101.) National criminal history information is obtained from a private database known as National Background Data.[7]

---

[7] During Letha Phillip's deposition, National Background Data was variously referred to by plaintiff's attorney as "National Background Data Source," (Dep. of Letha Phillips 30), "the National Background Data Company," (*id.* at 44), "the National Background Data, LLC" (*id.*), and other variations.  For purposes of this order, the court assumes that all of these designations refer to the same entity and refers to that entity as  "National Background Data."

(*Id.* at 30.)   Information about a consumer's employment history comes from the Work Number database. (*Id.* at 116.)  The Student Clearinghouse is accessed for a consumer's educational history. (*Id.*)

Occasionally, defendant will supplement the information it receives from Deverus from other sources. This typically occurs only upon client request.  (*Id.* at 112.)  Defendant has a small network of private researchers, usually located within a specific state or jurisdiction, to obtain state-specific records.  (*Id.* at 104, 107.)  The private researchers will typically go directly to county courthouses to retrieve physical copies of certain public records, such as criminal convictions. (*Id.* at 112.) Additionally, defendant's staff will sometimes perform research themselves, such as calling a state department of motor vehicles to obtain information about a consumer's driving history.  (*Id.* at 115.)

Although defendant seeks to certify a class of consumers who were the subjects of reports containing any "adverse criminal or public record information–including any judgment of conviction, traffic offense, summary infraction, arrest, bankruptcy, civil judgment or tax lien," most of the evidence adduced concerns defendant's method of performing national criminal background checks.  Such a check is conducted by running a Deverus search utilizing the National Background Data. Defendant can also conduct state-specific searches for criminal history, either through

the National Background Database or through one of the two alternative methods previously described.

The evidence shows that National Background Data may not be a very accurate source of public record information. For example, National Background Data will return a criminal history record as a match for a consumer even if the consumer's date of birth differs from the date of birth on the criminal record. (*Id.* at 157.) Defendant's vice president stated that she did not "feel like [National Background Data performs an] accurate search." (*Id.* at 175.) Defendant does not know how National Background Data gathers its public record information, (*id.* at 173), or whether the information is obtained secondhand from other private databases or firsthand from governmental entities, (*id.* at 172.) It is undisputed, however, that National Background Data does not obtain the "complete criminal record for every offense." (*Id*. at 174.)

Apparently, National Background Data can obtain criminal history information for 48 of the 50 states. (*Id.* at 163.) The information from each state comes from a state-specific database. Those databases are updated at differing intervals, meaning that information obtained from certain states may not be as current as information from other states. (*Id.* at 173.) Defendant is apparently aware of these varying update rates and knows that at least some of the state databases are not updated "for weeks and sometimes months." (*Id.* at 205-06.)

Any time a National Background Data search is conducted, the report is sent to quality review.  (*Id.* at 130.)  The quality review process is memorialized on two handwritten lists that were filed under seal in this case.  (*Id.* at 204).  During the quality review process, defendant's employees attempt to confirm the accuracy of records returned by National Background Data.  (*Id.* at 182.)  Sometimes, defendant will order additional state-specific searches, either through Deverus or through an independent researcher, in an attempt to confirm the accuracy of a particular record. Defendant will try to match the first and last names and date of birth from criminal records to the consumer's first and last name and date of birth.  (*Id.* at 189).  So long as the consumer's first and last names and date of birth match the first and last names and date of birth on the record returned by National Background Data, defendant will report the record to the employer as a possible match.  (*Id.* at 183.)  A middle name match is not required.  (*Id.* at 136.)  In defendant's view, it is up to the employer to decide the weight to give "possible" matches because  the employer "had additional ways of identifying those records."  (*Id.*)

This process generally describes how plaintiff's report was prepared.  Plaintiff's employer submitted her name, her date of birth, and her signed consent to defendant. Defendant inputted this identifying information into the Deverus program, (*id.* at 159), and conducted a national criminal history search using the National Background Data

database, (*id.* at 119). The search returned three criminal conviction records from Virginia bearing the name Cynthia Francine Hamilton. (*Id.* at 168.) Because the records were obtained from National Background Data, the records were flagged for quality review. As part of the quality review, defendant performed a state-specific Virginia criminal history search. (*Id.* at 182-83.) Apparently, this state specific search also used information from National Background Data. (*Id.* at 184.)[8] This state search returned the same three criminal conviction records, also bearing the name Cynthia Francine Hamilton. Defendant's employee matched plaintiff's first and last name and date of birth to the criminal records. Once this match was obtained, the quality control procedure was finished and the records were approved for release to plaintiff's employer. (*Id.* at 190.)

Plaintiff claims that during the relevant limitations period,[9] defendant has furnished more than 14,000 consumer reports containing adverse employment information of some kind, including criminal conviction records. Defendant concedes

---

[8] The efficacy of performing an additional state-specific search through Deverus is of questionable effect, because the state-specific search was conducted using National Background Data. It is not clear whether the data searched by National Background Data in a state-specific search is different than the data searched in a nationwide search. Defendant did not know whether the Virginia-specific search utilized different databases than the national search or whether the Virginia database was more reliable than the other National Background Data databases. (Dep. of Letha Phillips 184.)

[9] Defendant has agreed that a five-year limitations period is appropriate for purposes of this motion only. (Def.'s Resp. Br. 3.)

11

that it never provided the notice required by § 1681k(a)(1) when it furnished these reports. (Dep. of Letha Phillips 202.) However, defendant claims that § 1681k(a)(2) was not violated because only four persons have ever disputed the accuracy or completeness of the reports that defendant furnished.[10]

## V.    Class Certification

Before turning to the class certification inquiry, the court must address an issue, tangentially raised by the parties, which will directly affect this inquiry. That issue is what "requirement" § 1681k(a)(2) imposes on a CRA.

---

[10] Plaintiff counters that the low numbers of complaints are, in addition to being irrelevant, misleading because defendant does not keep any "systematic record" of complaints or disputes filed by customers or consumers. (Dep. of Letha Phillips  68.)  Nevertheless, there is no evidence in the record showing that other reports were incomplete or not up to date.

Moreover, plaintiff is wrong to suggest that the low number of complaints is a direct result of defendant's failure to provide § 1681k(a)(1) notice.  Plaintiff seems to suggest that unless defendant provided such a notice, a consumer would have no knowledge that an incorrect or incomplete report had adversely affected their employment prospects.  This is not accurate.  Before an employer "tak[es] any adverse action based in whole or in part on the [consumer] report, the person intending to take such adverse action shall provide to the consumer to whom the report relates" both a copy of the report and a description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A).  If a consumer applied for a position by either mail, telephone, computer, or other similar means and the employer decides to take an adverse employment action based in whole or in part on a consumer report, the employer must notify the consumer that the adverse action was taken in reliance on the consumer report and must give the consumer the name, address, and telephone number of the CRA that produced the report.  *Id.*   § 1681b(b)(3)(B)(i). The CRA is then statutorily obligated to provide a free copy of the credit report to the consumer.  *Id.* § 1681b(b)(3)(B)(ii).  Therefore, if it is true that defendant has produced a variety of reports that were incomplete and not up to date that have resulted in adverse employment actions, the consumer would receive notice of that fact, regardless of defendant's compliance with § 1681k(a)(1).

## A.      The Interpretation of § 1681k(a)(2)

Section 1681k applies when a CRA furnishes a consumer report for employment purposes that contains matters of public record which are likely to have an adverse effect on a consumer's ability to obtain employment.  When such a report is furnished, the CRA must either notify the consumer about the report, 15 U.S.C. § 1681k(a)(1), or utilize strict procedures designed to insure that the information in the report is complete and up to date, *id.* § 1681k(a)(2).  As explained, it is undisputed that: (1) defendant furnished consumer reports for employment purposes concerning plaintiff and the other putative class members; (2) these reports contained matters of public record; and (3) these matters of public record were likely to have an adverse effect on the consumer's ability to obtain employment.  Defendant also concedes that it did not provide the notice required by § 1681k(a)(1) to plaintiff or any putative class member.  Plaintiff and the putative class members bring their claims against defendant pursuant to § 1681n(a).  They can maintain a suit under that provision only if defendant "willfully fail[ed] to comply with any requirement imposed [by the FCRA] with respect to any consumer . . . ." *Id.* § 1681n(a).

The issue of whether defendant failed to comply with "any requirement" imposed by § 1681k(a)(2) raises the question of what § 1681k(a)(2) requires of a CRA. This is an issue of first impression in this circuit.  Neither the parties nor the

court found a reported federal appellate opinion answering this question, although two district court opinions from other circuits–discussed later in this order–have briefly considered the problem.[11]  Given the lack of relevant reported authority, the court will undertake a comprehensive analysis of this issue.

This is a matter of statutory interpretation, which begins with the statute's text. The first (and sometimes last) question is "whether the [statutory] language at issue has a plain and unambiguous meaning with regard to that particular dispute." *Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (internal quotation marks omitted).  Where a statutory term is undefined, a court "looks to the common usage of words for their meaning." *Consolidated Bank, N.A. v. United States Dep't of Treasury,* 118 F.3d 1461, 1464 (11th Cir. 1997) (en banc).  A word's common usage comes from a dictionary. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001).

The canons of construction–"rules of thumb that help courts determine the meaning of legislation"–are also utilized.  *Id.* at 1225 (internal quotation marks omitted).  The entire statutory scheme must be considered; one word or phrase cannot be interpreted in isolation. *Id.* Congress is presumed to act intentionally and

---

[11] Other district courts discussing § 1681k(a)(2) have addressed only the *factual* issue of strict procedures.  *See, e.g., Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006) (denying the defendant CRA's motion for summary judgment because there was "an issue of fact as to whether [its procedures] constitute[d] 'strict' procedures under § 1681k . . . .").

purposefully.  Accordingly, it is relevant if Congress "includes particular language in one section of a statute but omits it in another section of the same Act."  *Id.* at 1226. "A term appearing in several places in a statutory text is generally read the same way each time it appears," *id,*  and construction of a statute "must, to the extent possible, ensure that the statutory scheme is coherent and consistent."  *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 222 (2008).

A CRA is liable under § 1681n when it willfully fails to comply with any "requirement" imposed under the FCRA.  A requirement is "a thing demanded or obligatory."  The Random House College Dictionary, 1122 (rev. ed. 1982.)  Thus, the court must determine what the obligations of a CRA are under § 1681k(a)(2).

The first sentence of § 1681k(a)(2) provides that a CRA shall "maintain strict procedures designed to insure that whenever [this potentially adverse] public record information . . . is reported it is complete and up to date."  Clearly, this phrase requires a CRA to keep in existence strict procedures that are followed whenever a consumer report containing adverse information is furnished.  But, the sentence does not end with the word procedures.

Instead, the sentence goes on to explain the purpose behind the procedures: they must be "designed to insure" a particular result.  The word "design" means "to intend for a particular purpose," *id.* at 360, while the word "insure" (a synonym for

"ensure"), *id.* at 691, means "to secure or guarantee," *id.* at 440.  Accordingly, the strict procedures are intended to guarantee a certain result.  The desired result is that "whenever public information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is completed and up to date." 15 U.S.C. § 1681k(a)(2).  "Whenever" means "at any time," The Random House College Dictionary, 1498 (rev. ed. 1982), or simply at every time.  So, every time a CRA furnishes public record information, it must guarantee that the information is complete and up to date.

This means that § 1681k(a)(2) obligates a CRA to do two things.  The CRA must (1) maintain strict procedures *in order to* (2) guarantee that the information in every consumer report furnished is complete and up to date.  To show that a CRA has "willfully failed to comply with [this] requirement . . . with respect to any consumer," 15 U.S.C. § 1681n(a)(1)(A), that consumer must show that the CRA failed to maintain strict procedures *and* disclosed a consumer report about that consumer which was incomplete or not up to date.

The second sentence of § 1681k(a)(2) clearly demonstrates that whether the information in a particular report is up to date is crucial  for purposes of determining liability under that section. That sentence provides that:

> [f]or purposes of this paragraph, items of public record relating to
> arrests,  indictments,  convictions,  suits,  tax  liens,  and  outstanding

> judgments shall be considered up to date if the current public record
> status of the item at the time of the report is reported.

*Id.* § 1681k(a)(2). This establishes a precise standard for showing when information is "considered up to date" for purposes of § 1681k(a)(2). Such a standard would be necessary only if § 1681k(a)(2) *required* a CRA to furnish up-to-date reports. If the statute simply required the maintenance of strict procedures and did not also require the information in each report to be up to date, this second sentence would be largely irrelevant, because whether a particular report was up to date would not be dispositive of whether a CRA had adopted strict procedures. Indeed, there would be no need to ascertain "for purposes of" § 1681k(a)(2) whether a record was up to date. This alternate reading, which would render over 50% of § 1681k(a)(2) meaningless, is therefore untenable. *See United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) ("A statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage." (internal quotation marks omitted)).

The court's reading of the statute draws strong support from three other sources. First, the FTC, which is responsible for enforcing many of the FCRA's provisions, has suggested in staff commentary that § 1681k(a)(2) requires that each piece of public record information reported by a CRA be complete and up to date.[12] In a staff opinion

_____

[12] Although commentary by the FTC's staff is certainly not binding on this court, it can be instructive and the court finds it to be so here. The Eleventh Circuit has considered FTC staff commentary when interpreting the Fair Debt Collection Practices Act ("FDCPA"), which, like

letter, the FTC has asserted that § 1681k(a)(2) "require[s] . . . that each *item* [of public record information] reported [by the CRA] be complete and up to date."  Federal Trade Commission Staff Opinion Letter, 1999 WL 33932137, at *1 (Dec. 16, 1999) (emphasis original).  A CRA "complies with [§ 1681k(a)(2)] if its report is 'complete and up to date' in the sense that it includes the current public record status [of] each individual item reported."  *Id.*  This interpretation strongly supports the conclusion that § 1681k(a)(2) requires both the maintenance of strict procedures and the disclosure of a report that is complete and up to date.

Second, the only two district courts to address this question have also concluded that § 1681k(a)(2) requires a CRA to furnish a report that is complete and up to date.  In *Obabueki v. International Business Machines Corp.*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001), the court concluded that "[t]he logical starting point for an analysis of Section 1681k is whether the information provided [in the consumer report] was complete and up to date."  *Id.* at 396.  If the information in a report is complete and up to date, "then an inquiry into the agency's procedures is unnecessary."  *Id.*  Similarly, in *Haro v. Shilo Inn*, No. 08-6306-AA, 2009 WL 2252105 (D. Ore. July 27,

portions of the FCRA, is enforced by the FTC. "Although the FTC's construction . . . is not binding on the courts, because the FTC is entrusted with administering the FDCPA, its interpretation should be accorded considerable weight." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1373, n.2 (11th Cir. 1998); *see also Baynes v. ALLTEL Wireless of Ala., Inc.*, 322 F. Supp. 2d 1307, 1314 (M.D. Ala. 2004) (consulting FTC interpretations of FCRA provisions because the FTC "is the administrative agency charged with significant enforcement responsibilities under the FCRA.").

2009), the court concluded that "absent a showing that the information obtained by [the defendant CRA from a third-party vendor] was inaccurate or incomplete . . . [the] plaintiff's claim under § 1681k(a) must fail . . . ." *Id.* at *3. Each of these cases construed § 1681k(a)(2) as imposing a *requirement* that the information in a particular consumer report be complete and up to date.[13]

Third, and most importantly, the court's conclusion accords with the interpretation that nearly every federal circuit court of appeals has given to two very similar provisions of the FCRA. The similar provisions are 15 U.S.C. § 1681e(a), which requires every CRA to "maintain reasonable procedures designed to avoid violations of section 1681c of [the FCRA] and to limit the furnishing of consumer reports to the purposes listed under section 1681b of [the FCRA]," and 15 U.S.C. § 1681e(b), which states that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." These sections are similar

---

[13] These two cases demonstrate the incorrectness of plaintiff's contention that "there is no line of cases that interpret FCRA section 1681k to require that each report be inaccurate." (*See* Pl.'s Suppl. Br. 7.) Moreover, plaintiff's attempt to distinguish *Obabueki* is unconvincing. The fact that *Obabueki* was not a class action, (Pl.'s Reply Br. 11), is irrelevant to whether § 1681k(a)(2) has a threshold completeness requirement. Moreover, while it is true that *Obabueki* held that the question of whether certain procedures were "strict" was a matter for trial, it was clear in *Obabueki* that the reports at issue were incomplete and not up to date. Thus, there was no need to address the threshold issue raised in this case: does a plaintiff need to show that a report was incomplete or not up to date to sustain a claim?

to § 1681k(a)(2) because they each require a CRA to adopt certain kinds of procedures that must be designed to avoid, meant to assure, or designed to ensure a particular result. The required result differs between the statutes, as § 1681e(a) seeks to prevent violations of § 1681b and § 1681c, § 1681e(b) seeks to prevent the disclosure of an inaccurate report, and § 1681k(a)(2) seeks to prevent the disclosure of a report that is incomplete or not up to date. Nevertheless, the overall structure of the statutes are strikingly similar.[14]

Courts have uniformly read § 1681e(b) as requiring a CRA to both maintain reasonable procedures and disclose an accurate report.[15] *See Bryant v. TRW, Inc.*, 669 F.2d 72, 78 (6th Cir. 1982) ("[L]iability [under § 1681e(b)] flows from failure to follow (1) reasonable procedures (2) designed to assure maximum possible accuracy of information (3) concerning the individual about whom the report relates." (internal

---

[14] This similarity has been noted in other contexts. The Fourth Circuit has found that where there is a factual dispute about whether a CRA followed reasonable procedures under § 1681e(b), there is necessarily a factual dispute about whether a CRA followed strict procedures under 1681k(a)(2), which suggests that the factual inquiry under each statute is similar. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001); *see also Smith v. Hireright Solutions, Inc.*, 711 F. Supp. 2d 426, 439 (E.D. Penn. 2010) (same). Courts have also relied upon the interpretation of § 1681e(b) to guide the construction of § 1681e(a). *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) (noting that the court's reading of § 1681e(a) "finds support in cases interpreting" § 1681e(b)).

[15] Likewise, § 1681e(a) has been interpreted as requiring more than simply the adoption of reasonable procedures. *See Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 (5th Cir. 2000) (finding that "the actionable harm [under § 1681e(a)] is improper disclosure, not the mere *risk* of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made." (emphasis original)).

quotation marks omitted)).  To sustain a claim under § 1681e(b), a consumer must show that an inaccurate report was furnished by a CRA.  Thus, courts have concluded that § 1681e(b) does not require merely the adoption of reasonable procedures, but instead imposes an accuracy *requirement*.  The "reasonable procedures" language is read "as a limit on liability that might otherwise attach for inaccurate reports, rather than as an affirmative basis for a claim."  *Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000).

The Eleventh Circuit has held that the text of § 1681e(b) "*implicitly* requires that a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information" in order to sustain a claim.  *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (emphasis added). If the consumer presents no such evidence, there is  no need to "inquire further as to the reasonableness of the procedures adopted by the credit reporting agency."  *Id.* Thus, "[t]o establish a *prima facie* violation of § 1681e(b), a consumer must present evidence that a credit reporting agency's report was inaccurate." *Jackson v. Equifax Info. Servs.*, 167 F. App'x 144, 146 (11th Cir. 2006) (unpublished per curiam opinion); *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914, 918 (11th Cir. 2006) (unpublished per curiam opinion) (same).  District court opinions from this circuit predating *Cahlin* reached the same result. *See Lowry v. Credit Bureau, Inc. of Ga.*, 444

F. Supp. 541, 544 (N.D. Ga. 1978) (Murphy, J.) (noting that a consumer report must be inaccurate to sustain a claim under § 1681e(b)); *Middlebrooks v. Retail Credit Co.*, 416 F. Supp. 1013, 1015 (N.D. Ga. 1976) (Freeman, J.) (following unpublished 1973 decision of the undersigned which held that "in order to pursue a cause of action based on a willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate"); *Austin v. Bankamerica Serv. Corp.*, 419 F. Supp. 730, 732 (N.D. Ga. 1974) (Moye, J.) (same).[16]  The other circuits who have addressed the issue are in agreement.  *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (to show noncompliance with § 1681e(b), a plaintiff must show that "inaccurate information was included in [his] credit report"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 66 (1st Cir. 2008) ("It is thus clear that to prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an *actual* inaccuracy." (emphasis original)); *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971-72 (7th Cir. 2004) (same);  *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 415 (4th Cir.

_____

[16] The fact that a consumer must show both that the CRA failed to follow reasonable procedures and that the report produced was inaccurate prevents § 1681e(b) from imposing strict liability on a CRA for disclosing an inaccurate report.  A CRA can avoid liability under § 1681e(b) "if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases."  *Cahlin*, 936 F.2d at 1156; *see also Sarver v. Experian Info. Solutions*, 390 F.3d 969,  972 (7th Cir. 2004) ("[A] mistake does not render [a CRA's] procedures unreasonable.").  The same reasoning applies to the  interpretation of § 1681k(a)(2).

2001) (same); *Washington,* 199 F.3d 263, 267 n.3 ("Courts applying § 1681e(b) uniformly limit recovery to cases where the failure to follow procedures causes actual harm (i.e., release of an inaccurate report to the consumer)." (emphasis omitted));

*Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 39 (D.C. Cir. 1984) (same);

*Lawrence v. Trans Union LLC*, 296 F. Supp. 2d 582, 587 (E.D. Pa. 2003) (same).[17]

In sum, courts have concluded that "the plain language of § 1681e(b) creates an obligation on the part of the consumer reporting agency to ensure the preparation of accurate reports . . . ." *DeAndrade*, 523 F.3d at 67.  Indeed,  while  interpreting

---

[17] The necessity of showing that a CRA disclosed an inaccurate report must not be conflated with the requirement of showing damages under either § 1681n or § 1681o.  The Sixth Circuit has recently pointed out that many of the cases (some of which are cited above) that have interpreted § 1681e(b) have stated that a consumer must show actual damages to recover under that subsection. *See Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 707-08 (6th Cir. 2009). These cases were either decided before or failed to acknowledge the 1997 amendment to § 1681n which allowed the recovery of statutory damages when actual damages could not be shown.  The Sixth Circuit criticized *Cahlin* because it was decided prior to 1997.  *See Beaudry*, 579 F.3d at 708.

However, even though a consumer no longer needs to show that damages resulted from the disclosure of an inaccurate consumer report to sustain a claim under § 1681n and § 1681e(b), the consumer must still show that the CRA violated a "requirement" of the FCRA. *Cahlin* concluded that § 1681e(b)–not § 1681n–"implicitly requires that a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information."  *Cahlin*, 936 F.2d at 1156. Thus, *Cahlin's* holding is based on the text of § 1681e(b), which would not be affected by the 1997 amendment to § 1681n.

Moreover, *Beaudry* does not hold that there is no need for a consumer to show that the CRA produced an inaccurate report. In *Beaudry* the Sixth Circuit concluded that the consumer had adequately alleged a violation of § 1681e(b) based on her claim that the defendant CRAs "were generating credit reports [about her] based on inaccurate information due to their failure to update their databases to accommodate the new Tennessee driver's license numbering system."  579 F.3d at 707.  Thus, the consumer had adequately alleged that the defendant CRAs had furnished an inaccurate report.

§ 1681e(a) in *Washington*, the Fifth Circuit rejected the argument–similar to the one raised by plaintiff here–that a consumer only needed to show that the CRA failed to adopt reasonable procedures. 199 F.3d at 267.  The plaintiffs in *Washington* argued that "maintaining reasonable procedures is a requirement under § 1681e(a)." Since "the FCRA impose[d] liability [under §§ 1681n and 1681o] for a [CRA's] failure to comply with" any FCRA requirement, there was no need to demonstrate that either of the violations that the reasonable procedures were meant to prevent–a violation of § 1681b or § 1681c–had actually occurred.  *Id.*

The Fifth Circuit spurned this purported "plain language argument," which wrongly ignored the fact that the statute did not simply "require" the adoption of reasonable procedures.  Instead, "[t]he language in § 1681e(a) indicates–by qualifying the purpose of the procedural requirement–that the 'requirement imposed under' § 1681e(a) is maintaining 'reasonable procedures' *in order to prevent improper disclosures.*" *Id.* (emphasis original). The purpose of the reasonable procedures was to prevent violations of § 1681b and § 1681c and "this purpose is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent."  *Id.* at 266. "[T]he actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made."  *Id.* at 267.

*Cahlin, Washington*, and the other cases interpreting § 1681e(a) and § 1681e(b) compel the conclusion that § 1681k(a)(2) does not simply require the adoption of a certain kind of procedure.[18]  *See CBS Inc.*, 245 F.3d at 1226 ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").  The purpose of the strict procedures is to guarantee that the information contained in each consumer report furnished is complete and up to date.  As the Fifth

---

[18] Plaintiff argues that interpreting § 1681k(a)(2) as imposing an "accuracy" requirement would render it duplicative of § 1681e(b).  This argument is unconvincing for two reasons.  First, the scope of each statute is distinct.  Section 1681e(b) applies whenever a CRA prepares a consumer report, while § 1681k(a)(2) applies only when a CRA furnishes a consumer report containing potentially adverse information for employment purposes.  Moreover, there is a difference between strict and reasonable procedures, *see Equifax, Inc. v. Federal Trade Comm'n,* 678 F.2d 1047, 1049 n.4 (11th Cir. 1982) (noting that there is a meaningful distinction between strict and reasonable procedures).  Plaintiff has not provided a convincing explanation for why an interpretation that views § 1681k(a)(2) as simply imposing a heightened procedural requirement in certain limited circumstances is duplicative of the more general and less strict requirement in § 1681e(b).

Second, it is not apparent that § 1681k(a)(2) actually imposes an accuracy requirement at all.  Instead, it requires that a report be complete and up to date.  Completeness, up to dateness, and accuracy are not necessarily synonymous.  "Accuracy is quite clearly not a self-defining concept" and, unfortunately, the "FCRA's fragmentary legislative history provides little, if any, guidance as to how Congress intended this standard to be applied."  *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1157 (11th Cir. 1991).  In the context of § 1681e(b), courts have noted two possible definitions of accuracy.  A report could be "accurate on its face" or "technically accurate" if the report "contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect."  *Id.*  Under a more stringent "maximum possible accuracy" standard, a report that contains factually correct information is still inaccurate if the information "could also be interpreted as being misleading or incomplete."  *Id.*

It is true that under a maximum possible accuracy definition, an incomplete or not-up-to-date report would also be inaccurate.  Thus, using such a definition would mean that both § 1681k(a)(2) and § 1681e(b) prohibited inaccurate reports.  But, this would not make the reach of each statute identical, because each statute would target a different aspect of accuracy.  Section 1681k(a)(2) would target the completeness aspect of accuracy, while § 1681e(b) would pinpoint the factual correctness aspect.

Circuit noted in *Washington*, "this purpose is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent." 199 F.3d at 267. The strict procedures are not meant to protect against "the mere risk of improper disclosure that arises when [strict] procedures are not followed . . . ." *Id.* For all of these reasons, the court concludes that to establish a violation of the requirements of § 1681k(a)(2), a plaintiff must show that: (1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to maintain strict procedures designed to insure that the information in that report was complete and up to date; and (3) the consumer report was either incomplete or not up to date. With this conclusion established, the court will now turn to a consideration of plaintiff's request for class certification.

### B. Class Action Certification Standards

"A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted). Rule 23(a) establishes four baseline requirements:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  "There four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims."  *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

There are also three requirements in Rule 23(b) and a plaintiff must satisfy at least one of those requirements to justify the certification of a class.  The Rule 23(b) requirement at issue in this case is predominance.   Rule 23(b)(3) allows the certification of a class where:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy.  The matters pertinent to these findings include:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

27

(D)   the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Thus, the class certification analysis is a multi-tiered inquiry, which requires an assessment of whether all four Rule 23(a) factors have been established and whether at least one of the Rule 23(b) factors exists. The proper standard for this analysis is not "a mere pleading standard." *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Plaintiff, as the party seeking class certification, "must affirmatively demonstrate [her] compliance with the Rule–that is, [she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis original).[19] A court must conduct "a rigorous analysis" to ensure "that the prerequisites of Rule 23(a) have been satisfied," *id.* (internal quotation marks omitted), and this analysis "will entail some overlap with the merits of the plaintiff's underlying claim," *id.*

In light of the court's ruling as to the requirements imposed by § 1681k(a)(2), the class definition and evidence adduced may need to be modified. As the class is

---

[19] In *Dukes*, the Supreme Court noted that the case of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), was often "mistakenly cited" for the proposition that a court could not consider the merits of a suit during a class-certification analysis. *Dukes*, 131 S.Ct. at 2552 n.6. Indeed, many opinions from this district cited *Eisen* for this proposition. *See, e.g., In re Theragenics Corp. Securities Litig.*, 205 F.R.D. 687, 694 (N.D. Ga. 2002) (Thrash, J.) (citing *Eisen* for the proposition that "the court does not inquire whether the plaintiffs have adduced sufficient evidence to prevail on the merits of their claims."). *Dukes* undermines much of the analysis in these prior opinions.

currently defined, it is unclear whether any putative class member would be able to sustain a claim under § 1681k(a)(2) because there is simply no evidence that a significant number of the putative class members were the subject of an incomplete or not up-to-date consumer report. Based on this evidence, the court has serious concerns about the numerosity requirement. Moreover, the court is also concerned about the typicality requirement, because although it appears that plaintiff was the subject of an incomplete or not up-to-date report, it does not appear that her claim is typical of the majority of the other plaintiffs' claims in this respect. Nevertheless, for purposes of this motion only, the court has assumed that all Rule 23(a) prerequisites are satisfied and only addressed the predominance requirement.

Under Rule 23(b)(3), a plaintiff must affirmatively establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quotation marks omitted). This requires an examination of "the claims, defenses, relevant facts and applicable substantive law." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (quotation marks omitted). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id.* at 1255

(quotation marks omitted). "Where, after adjudication of the classwide issues, [a] plaintiff[] must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of [her] individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.*[20]

Plaintiff has failed to affirmatively establish the predominance required by Rule 23(b)(3) because she has not demonstrated that issues subject to generalized proof outnumber those subject to individualized proof. In order to sustain a claim under § 1681n for defendant's willful failure to comply with § 1681k, each putative class member will need to show that defendant willfully failed to comply with both § 1681k(a)(1) and § 1681k(a)(2). Defendant's non-compliance with § 1681k(a)(1) is subject to generalized proof, because defendant has acknowledged that, as a matter of policy, it never provides notice to the subjects of the consumer reports it prepares.

_____

[20] The former Fifth Circuit laid out a straightforward way to apply this standard, which has later been used by the Eleventh Circuit. *See Klay*, 382 F.3d at 1255 (adopting "alternative formulation" of predominance test from *Alabama v. Blue Bird Body Co.*, 573 F.2d 309 (5th Cir. 1978)). Under that test, "if common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered." *Klay*, 382 F.3d at 1255. In other words, "if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important." *Id.* "If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate." *Id.*

To show that defendant willfully failed to comply with § 1681k(a)(2), each class member must demonstrate that defendant: (1) furnished a consumer report containing potentially adverse information about that consumer; (2) failed to maintain strict procedures when it reported the adverse information; and (3) furnished a consumer report containing adverse information that was either incomplete or not up to date.

The first showing, whether defendant maintained strict procedures when it produced the consumer's report, will involve some common factual issues and some individualized inquiries. Plaintiff contends that the strict procedures inquiry is identical for all class members because defendant "uses the same faulty procedures (a static database from another company which uniformly contains only fragments of a public record from a point in time in the past) in its initial data-gathering process" and because defendant uses the same "uniform" quality control procedures in all cases based "on a short nondiscretionary checklist that Defendant says it follows every time" it prepares a report.  (Pl.'s Suppl. Br. 9.)

Although there will be some general factual overlap regarding the faulty procedures defendant uses in its initial data-gathering process–since defendant uses the same computer system to obtain much of its criminal history information–there will also be significant factual differences.  The inquiry will be whether defendant

failed to "maintain strict procedures designed to insure that whenever public information . . . is reported it is complete and up-to-date," 15 U.S.C. § 1681k(a)(2), with respect to that consumer, *id.* § 1681n(a). In other words, each consumer must show that defendant failed to maintain strict procedures with respect to the adverse information contained in that consumer's report.

The source of the adverse information in each report will require at least some individualized proof.  Although much of the criminal record information comes from National Background Data, defendant sometimes obtains criminal information from other sources.  This includes researchers who obtain criminal background data for particular jurisdictions, such as New York or Georgia.  (*See id.* at 107-08); (*see also id.* at 111 (noting that defendant sometimes uses the Georgia Criminal Information Center, the actual state repository of public records, to obtain records).  This range of other sources could be quite broad and vary from consumer to consumer.  Moreover, the class definition includes not only persons who were the subject of reports containing adverse criminal information, but also persons who were the subjects of reports containing adverse noncriminal information, including bankruptcy records, civil judgments, or tax liens.  Defendant does not use National Background Data to obtain a consumer's credit history (which could potentially include civil judgments, bankruptcies or tax liens), (*see id.* at 209), or for bankruptcy records.  Defendant uses

Equifax to provide credit histories and Equifax allegedly searches and provides actual public records. (*Id.*) For bankruptcy searches, defendant manually searches PACER records, which likely also include actual public records. (*Id.*) Therefore, in order to determine whether the source of a particular consumer's records was faulty or inaccurate and thus whether defendant's information gathering procedures can be considered "strict," the court would need to determine the source of each piece of adverse information in a consumer's report and then evaluate the quality of that source. This will necessarily entail individualized inquiry for many reports, even if some of the record sources may be common to many potential class members and thus susceptible to classwide proof.

Additionally, individualized factual inquiry will be necessary to determine the precise quality review procedures that defendant applied to many of the reports. Although defendant acknowledged that the same general written procedures apply to all quality reviews performed by its employees, these procedures cannot be termed nondiscretionary. They provide that in the case of a possible record match, defendant's employees are supposed to suggest additional searches to the client to verify the accuracy of the record, including a potential statewide search from a records repository or research from the actual county where an arrest was made. The procedures also require an employee to advise a client that the court clerk's office can

be contacted in an attempt to gather correct information.  The extent to which such additional searches were utilized–which appears to be discretionary on a case-by-case basis–will require individualized factual inquiry for most consumers.

Lastly, it will be necessary to conduct a highly individualized inquiry into the content of each consumer's report in order to determine if the adverse information in that report is complete and up to date.  To sustain a claim, each consumer will need to prove that the adverse information in the report defendant furnished about that consumer was either incomplete or not up to date.  This will entail an individual inquiry into the contents of each consumer report issued by defendant.  *See Owner-Operator Indep. Drivers Assoc. v. USIS Commercial Servs.*, 537 F.3d 1184, 1194 (10th Cir. 2008) (affirming denial of class certification request under 15 U.S.C. § 1681e(b) and noting that "whether a report is accurate may involve an individualized inquiry."). The scope of this individual inquiry will require a variety of evidence specific to each case–such as the production of the actual up-to-date version of the public record at the time the report was issued.

In sum, the court will need to conduct individual inquiries for each consumer with respect to: (1) the precise source of the adverse records reported and their accuracy; (2) the additional discretionary searches (if any) that were made during the quality review process on that consumer's report; and (3) whether adverse information

34

in the report is complete and up to date.  These inquiries will predominate over the common issues, which include whether defendant sent the notice required by § 1681k(a)(1), the quality of the general databases that defendant uses to obtain information, and the general quality control procedures that defendant prescribes. Each of these factual inquiries will require the presentation of significant amounts of new evidence for each putative class member.  Thus, it is clear that the predominance requirement is not met and this class cannot be certified.  Plaintiff's motion must be denied.

For the foregoing reasons, plaintiff's "Motion for Class Certification" [37] is hereby **DENIED**.

**IT IS SO ORDERED**, this 20th day of September, 2012.


s/*William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge